**HELMING & CO., P.C., Plaintiff,**

v.

**RTR TECHNOLOGIES, INC., Defendant.**

**C.A. No. 13–CV–12760–MAP.**

United States District Court, D. Massachusetts.

Signed Jan. 6, 2015.

Steven Joseph Bolotin, Morrison Mahoney LLP, Boston, MA, for Plaintiff.

James C. Donnelly, Jr., Mirick, O'Connell, Demallie & Lougee, Worcester, MA, Amanda M. Baer, Mirick, O'Connell, Demallie & Lougee, LLP, Westborough, MA, for Defendant.

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

### I. INTRODUCTION

On September 29, 2014, the court denied, in summary form, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. No. 12) and allowed Plaintiff's Cross–Motion for Summary Judgment (Dkt. No. 20). (Mem. & Order 3, Dkt. No. 35.) This memorandum will set forth the court's rationale for these rulings in more detail.[1]

### II. FACTS[2]

Helming & Co., P.C. ("H & C"), a Connecticut business, provided tax, business, and accounting services, including turnaround consulting services. RTR Technologies, Inc.("RTR"), a New York corporation with its principal place of business in Stockbridge, Massachusetts, supplied heating products and systems for rail and mass transit. The sole owner and president of RTR was Rosalie Berger; her husband, Craig Berger, was an employee of RTR.

In 2002, RTR applied for and received from the Small Business Administration

---

1. As will be seen below, this action arises from previous litigation in which the same parties played opposite roles. This memorandum will therefore refer to Plaintiff and Defendant by their abbreviated business names in order to avoid confusion.

2. As required at the summary judgment stage, the facts are recited in the light most favorable to the non-moving party. *RTR Techs.,* *Inc. v. Helming,* 707 F.3d 84, 87 (1st Cir. 2013). Unless otherwise noted, the facts are drawn from Defendant's Statement of Material Facts (Dkt. No. 14), Defendant's Affidavit in Support (Dkt. No. 15), Plaintiff's Supplemental Statement of Material Facts (Dkt. No. 22), and Defendant's Statement of Material Facts (Dkt. No. 29), along with the documents referenced therein.

("SBA") an Economic Injury Disaster Loan in the amount of $687,5000. In 2003, after failing to make payments on its loan, RTR "entered into a forbearance agreement with the SBA that required [RTR] to employ a turnaround manager to help it recover from its financial difficulties." *RTR Techs., Inc. v. Helming,* 815 F.Supp.2d 411, 416 (D.Mass.2011). The first company hired by RTR discovered that, from 1994 until 2003, Ms. Berger had withdrawn from RTR's accounts sums totaling over $1 million. RTR's balance sheets carried these withdrawals as "loans to officer." *Id.* This first turnaround company identified these "loan to officer" transactions as compromising the financial health of the company and characterized Ms. Berger's management practices as a liability to RTR. Perhaps not surprisingly, Ms. Berger terminated RTR's contract with the first turnaround company and, thereafter, hired H & C to perform the same services. *Id.* at 417.

On September 29, 2003, RTR and H & C entered into an Engagement Agreement, which Ms. Berger signed in her capacity as president of RTR. (Engagement Agreement, Dkt. No. 1, Attach. 5, Ex. 1 (hereinafter "Agreement").) The contract contained the following indemnification provision:

> [RTR] ... agree[s] *to indemnify and hold harmless* [H & C] to the full extent lawful against any and all losses, claims, damages, liabilities and cost and all actions in respect thereof and any reasonable legal or other expenses in giving testimony or furnishing documents in response to a subpoena or otherwise including the cost of investigating, preparing or defending any such action or claim, whether or not in connection with litigation in which H & C is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or *arising out of* (a) any transactions (as contemplated by the letter agreement dated as of September 25, 2003, as it may be amended from time to time ...), or (b) HSC acting for [RTR] in the manner authorized and described in the Agreement including, without limitation, any act or omission by [RTR] in connection with its acceptance of or performance or non-performance of its obligations under the Agreement; provided, however, such indemnity agreement shall not apply to any such loss, claim, damage, liability or cost to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or unlawful activities of H & C. [RTR] also agrees that *H & C shall not have any liability* (whether direct or indirect, in contract or tort or otherwise) *to [RTR] for or in connection with the engagement of H & C, except for any such liability for losses, claims, damages, liabilities or expenses that is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from H & C's gross negligence, willful misconduct or unlawful activities.*

(*Id.* at 12 (App'x B)(emphasis added).) Additionally, the Agreement stated that Connecticut law would govern. (*Id.* at 8.)

Pursuant to the Agreement, H & C performed management advisory services for RTR, including assessing RTR's business operations and financial condition and initiating a management action plan. (*Id.* at 2.) H & C's initial analysis was to include reviewing the work of the previous turnaround company to ease the transition between service contracts. (*Id.* at 3.) H & C also pledged to review and validate the integrity of RTR's accounting measurements and forecasts. (*Id.* at 3 & 4.) If

requested, H & C also agreed to "render such other financial advisory services under separate written agreement(s)." (*Id.* at 5.)

Part of H & C's review of RTR included an evaluation of the "loan to officer" transactions previously identified by the first turnaround company as a "burden on RTR resources." *RTR Techs., Inc.*, 815 F.Supp.2d at 416. After evaluating RTR's balance sheets and the Berger's personal finances, H & C concluded that the payments carried on RTR's books as "loan to officer" needed to be reclassified as income to the Bergers. *Id.* at 417. The parties apparently recognized that this process of reclassification would have tax ramifications for the Bergers. In February 2005, the parties signed another agreement wherein H & C agreed to provide tax-related services, including the preparation of amended tax returns. *Id.* at 417 n. 2.

In November 2005, the parties signed a "Side letter dealing with Advances/Loans to Related Parties," in which H & C outlined its recommendations for correcting errors in RTR's books and updating its tax returns. (Dkt. No. 23, Attach. 3 at 44, Ex. D.) This side letter did not contain an indemnification provision. Following H & C's advice, RTR and the Bergers authorized H & C to amend their tax returns to reflect the previous "loan to officer" transfers as income to the Bergers. This change resulted in greater tax liability for the Bergers. *Id.* at 418. In 2008, the parties ended their business relationship.

On October 9, 2009, RTR and the Bergers individually filed suit against H & C, alleging *inter alia*, professional malpractice, breach of contract, and breach of fiduciary duties, including allegations of gross negligence and/or willful misconduct on the part of H & C. *See RTR Technologies, Inc. v. Helming*, C.A. No. 3:09–cv–30189 (hereafter "underlying" or "prior" action).[3] (Dkt. No. 1, Attach. 6, Ex. 2, Compl. ¶¶ 17, 19, & 24.) On September 19, 2011, the court granted summary judgment in favor of H & C in this underlying action, based on RTR's "failure to file the complaint within the prescribed statutory period, to produce evidence of damages, and to demonstrate that [H & C's] advice was negligent." *RTR Techs., Inc.*, 815 F.Supp.2d at 415, *aff'd*, 707 F.3d 84 (1st Cir.2013). In its analysis, the court concluded that H & C's advice to RTR and the Bergers was correct "as a matter of prudence, ethics, and law." *Id.* at 427. Moreover, the court observed that RTR's claim against H & C for negligence bordered on being "ludicrous." *Id.* at 434.

After the court's ruling, H & C moved for an award of statutory costs totaling $15,341.36, for attorneys' fees totaling $154,824.50, and for non-statutory costs totaling $37,664.47, based in part on the court's inherent power to "award such fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *RTR Techs., Inc.*, 707 F.3d at 94. H & C had indicated to RTR early on in the litigation that it considered itself entitled to indemnification and cited the Agreement as a basis for its argument for fees to this court.[4] RTR also brought the indemnification provision to the attention of the court as part of its opposition to H & C's motion for costs and fees.

Ultimately, the court granted H & C's motion for statutory costs, totaling

---

**3.** RTR's lawsuit was originally filed in state court but removed by H & C to this court.

**4.** By letter dated April 4, 2011, counsel for H & C notified RTR that it would "seek indemnity for any damages, costs, and attorneys' fees incurred in defending the claims of Craig and Rosalie Berger" under the terms of the Agreement. (Dkt. No. 1, Attach. 7, Ex. 3.)

$15,341.36, but denied the motion for attorneys' fees and non-statutory costs. *RTR Technologies, Inc. v. Helming,* 2012 WL 601913 (D.Mass. Feb. 22, 2012), *aff'd,* 707 F.3d 84 (1st Cir.2013). In its order on the motion, the court stated, "Similarly, the indemnification provision contained in [H & C's] agreement with [RTR] might possibly provide the basis for an award of fees and costs in an independent action, but not as part of the current motion." *Id.* at *2. The First Circuit's opinion affirming this court's decision contained no reference to the indemnification provision.

Thereafter, H & C sent a letter to RTR calling attention to the First Circuit's ruling affirming the court's order for payment of statutory costs. (Dkt. No. 23, Attach. 3 at 46, Ex. E.) In response, RTR sent a letter and a check for $15,341.46 to H & C. The letter stated that the check represented "payment in full of the obligations of [RTR], Rosalie Berger and Craig Berger to [H & C]." (Dkt. No. 15, Attach. 2 at 105, Ex. 12.) Furthermore, the face of the check contained the phrase "full payment and satisfaction." (*Id.* at 106.) H & C accepted and deposited that check.

On October 31, 2013, H & C filed the current action seeking to recover the costs, attorneys' fees, and expenses incurred in defending the underlying action, as well as those incurred in pursuit of the present action.[5] Count One charges breach of contract based on RTR's prior lawsuit against H & C in contravention of the "hold harmless" terms of the Agreement (Compl. ¶¶ 32–39, Dkt. No. 1); Count Two offers a claim of breach of contract based on RTR's failure to indemnify H & C for the costs of defending the claims brought by the Bergers in the underlying action (*id.* at ¶¶ 40–45, Dkt. No. 1). On December 20, 2013, RTR moved to dismiss the current lawsuit for failure to state a claim, or in the alternative, for summary judgment, relying on the record from the prior action and the documents regarding its payment to H & C of the court-ordered statutory costs. On January 17, 2014, H & C opposed RTR's motion and filed its own cross-motion for summary judgment as well. The court heard argument on the motions on March 31, 2014, and took them under advisement. As noted above, on September 29, 2014, the court ruled on the motions via a summary order, promising to follow with a longer memorandum explaining its rationale in detail. This is that memorandum.

## III. *DISCUSSION*

■ RTR formally moved under Fed. R.Civ.P. 12(b)(6) to dismiss H & C's complaint for failure to state a claim upon which relief could be granted.[6] However, both parties have also proposed evaluating the parties' arguments under the standard applicable to summary judgment motions. Pursuant to Rule 56, summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). On cross-motions, the court should address each motion sepa-

---

5. H & C alleges that it incurred $256,788.96 in legal fees and unreimbursed costs from investigating and defending the underlying action. (Compl. ¶ 31, Dkt. No. 1.)

6. For purposes of a motion to dismiss, the court must take the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Curran v. Cousins,* 509 F.3d 36, 43 (1st Cir.2007). Beyond the complaint, the court may also consider facts contained in "documents the authenticity of which are not disputed by the parties; [in] official public records; [in] documents central to plaintiff['s] claim; or [in] documents sufficiently referred to in the complaint." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993).

rately and draw inferences against each movant in turn. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997). As the material facts are not in dispute and both parties have submitted extrinsic documents for consideration, the court will evaluate the motions under the summary judgment standard, as the parties suggest. *See Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir.1989) (stating that a court may convert a motion to dismiss to one for summary judgment under Rule 56).

The dispute centers primarily on two questions. First, did the indemnification provision of the Agreement protecting H & C apply to the underlying action by RTR against H & C? Second, if so, are H & C's current claims for fees and expenses nonetheless somehow precluded by the underlying action itself? As will be seen below, the provision protecting H & C manifestly does apply, and H & C's claims are not barred by the underlying action.

### A. *The Indemnification Provision*

RTR presents two reasons why the indemnification provision of the Agreement does not require it to reimburse H & C for the costs of either the current action or the underlying action. First, RTR argues that under Connecticut law general indemnification clauses cover only losses from litigation brought by third parties, not from lawsuits brought by "first parties," *i.e.,* the parties to the contract themselves. Second, RTR argues that the indemnification provision applies only to the management advisory services provided by H & C and not to the tax-related services that, H & C contends, were at the heart of the underlying action.

In support of its "third-party/first party" argument RTR relies primarily on the Supreme Court of Connecticut's decision in *Amoco Oil Co. v. Liberty Auto and Elec-*

*tric Co.*, 262 Conn. 142, 148, 810 A.2d 259 (2002). RTR cites *Amoco* for the proposition that "an action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party." *Id.* at 148, 810 A.2d 259. RTR also cites some unpublished Connecticut Superior Court decisions that appear to limit indemnity actions to situations where the indemnitee becomes obligated to pay damages to a third party. *Conn. Res. Recovery Auth. v. Murtha Cullina, LLP*, 2006 WL 1530158 at *3 (Conn.Super.Ct. May 23, 2006); *De-Carlo & Doll, Inc. v. Town of Chester*, 2008 WL 4416073 at *4 (Conn.Super.Ct. Sept. 17, 2008).

RTR's arguments rely on an overly-broad reading of *Amoco*. First, *Amoco's* holding is qualified by language making clear that "the concept of indemnity *usually* involves" the indemnitee's liability to a third-party. *Amoco*, 262 Conn. at 149, 810 A.2d 259 (emphasis supplied). The decision nowhere suggests that an indemnification provision can *never* support a claim based upon actionable misconduct by the so-called "first party."

Second, the facts in *Amoco* are entirely different from the facts underlying the case before this court. In *Amoco*, the plaintiff hired the defendant to construct underground gasoline tanks. More than six years later, the plaintiff discovered that one of the tanks was leaking and brought suit. The six-year statute of limitations had run on any claim for breach of contract, so plaintiff anchored its claim on the indemnification provisions of the parties' contract. The Connecticut Supreme Court concluded that plaintiff's claim for losses was "not a claim for indemnification at all, but, rather, a claim for damages for its own losses arising out of [the defendant's] allegedly negligent and improper installa-

tion of the tanks." *Id.* at 151, 810 A.2d 259. In other words, plaintiff's lawsuit was, in fact, a claim for breach of contract dressed up as an indemnification action to avoid the statute of limitations problem. *Id.* at 152, 810 A.2d 259.

The case currently before this court is entirely different. H & C is seeking compensation for damages it suffered as a result of the prior, baseless lawsuit that RTR brought against it. The parties' contract included a provision explicitly protecting H & C from any liability to RTR that did not arise from H & C's gross negligence and indemnifying H & C for any damages suffered as a result of *any* claims brought against H & C for anything other than H & C's gross negligence. Nothing in *Amoco* suggests that indemnification would be improper in these very different circumstances.

The Second Circuit's decision in *Rand–Whitney Containerboard Ltd. P'ship v. Town of Montville*, 290 Fed.Appx. 430, 433 (2d Cir.2008) offers no substantial support for RTR's argument. In language similar to that used in the *Amoco* decision, this decision merely states that under Connecticut law, phrases such as "indemnification" and "hold harmless" are "*typically* interpreted to apply to third-party claims." *Id.* (emphasis added).

The holdings of the various cases cited by RTR are all anchored on the specific language of the contracts involved in those cases. Here, the language of the indemnity clause is more extensively drawn. It broadly covers all costs incurred based on any claim against H & C except those claims found by a court to have "resulted primarily and directly from [H & C's own] gross negligence, willful misconduct or un-

lawful activities." (Agreement 12 (App'x B)(emphasis added).) Most significantly, the indemnification provision itself explicitly encompasses "first-party" claims by RTR against H & C. It states that RTR "also agrees that H & C shall not have any liability (whether direct or indirect, in contract or tort or otherwise) to [RTR] for or in connection with the engagement of H & C," except where H & C itself is found to have committed "gross negligence, willful misconduct or unlawful activities." (Agreement 12 (App'x B).) Nothing in any of the authorities cited by RTR describes indemnification language that is so broad and, at the same time, so directly focused on the relationship between the contracting parties.

■ Moreover, even if the court were to construe the indemnity provision as precluding recovery unless there had been loss from a third-party suit, H & C has alleged third-party harm. Count Two of its complaint sets forth a claim for breach of contract based on RTR's failure to indemnify H & C "for the claims brought against it by the Bergers." (Compl. ¶ 44 at 7, Dkt. No. 1.) Because the Bergers are obviously third parties, RTR would be obliged, in any event, to indemnify and hold harmless H & C for fees and costs incurred as a result of claims by them.[7]

■ RTR next argues that the claims from the prior action arose, not from the Agreement (the first contract between the parties and the one with the indemnification provision), but from the second agreement for tax services. RTR points to the language in the Agreement that specifically states that any other services, other than management advisory services, would

---

7. RTR makes a cursory argument that, as an S Corporation, the tax obligations of RTR automatically pass through to the Bergers and, as a result, the Bergers are somehow in privity with RTR and do not qualify as third parties. RTR cites no support for this proposition.

require separate agreements. RTR maintains that the prior action arose from the tax and financial services provided by H & C that were the subject of separate contracts that, in contrast to the Agreement, lacked indemnification agreements.

This argument does not survive scrutiny. H & C's recommendation to RTR that it re-characterize the so called "loans to officer" so that they appeared as income to the Bergers, and amend the applicable tax returns accordingly, arose out of the contract for turnaround services—that is, the Agreement. It cannot be disputed that the underlying action grew out RTR's unhappiness with this recommendation and was thus subject to the indemnification clause.

■ Under Connecticut law, the term "arise out of" is construed broadly. *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 157–58, 61 A.3d 485 (2013) (defining "arise out of" as "connected with, had its origins in, grew out of, flowed from, or was incident to"). The claims advanced in the underlying action were directly attributable—*i.e.*, they "arose from"—the services provided by HSC under the Agreement. When RTR engaged the services of H & C, the "loans to officers" had already been identified as a severe drain on the financial well-being of RTR by the first turnaround company. Though the actual paperwork involved in amending RTR's tax return was covered by the second agreement between the parties, the evaluation of the "loans to officer," as well as the resulting recommendation to reclassify them, originated in the Agreement. (Agreement 4 ("H & C will review and facilitate ... accounting measurement and discuss relevant observations and suggestions with designated Management.").)

In sum, the indemnification provision of the Agreement is so broad as to encompass not only third-party suits, but first-party suits as well. Moreover, the underlying action "arose from" the relationship established by the Agreement between the parties, which included the indemnification provision. Accordingly, the Agreement obligates RTR to reimburse H & C for the fees and costs incurred in defending the underlying action brought by RTR against H & C and, in addition, the fees and costs incurred in the present action necessarily incurred to obtain those earlier fees and costs.

## B. *Effect of the Underlying Action*

RTR pursues three arguments based on the underlying action. First, RTR asserts that H & C waived its claims when it failed to bring them as compulsory counterclaims in the prior action. Second, RTR argues that, because this court ruled against H & C's motion for indemnification in the prior action, its current claims are barred by the doctrine of *res judicata*. Third, RTR contends that, pursuant to the doctrine of accord and satisfaction, its debts to H & C were settled when H & C cashed the check for statutory costs.

■ Federal Rules of Civil Procedure 13(a) states that counterclaims must be brought if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." RTR cites First Circuit authority to the effect that "if a counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction,' the counterclaim is compulsory and must be raised." *In re Iannochino*, 242 F.3d 36, 41–42 (1st Cir.2001). Because the language of the indemnification provision of the Agreement states that RTR was obliged to pay costs arising from its obligation "as and when incurred" (Agreement

12, App'x B), H & C, according to RTR, should have filed a counterclaim in the prior action.

 This argument does not hold water. H & C did not "have" its indemnity claim at the time of the prior action. As the Supreme Court has stated, an earlier judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). It is generally recognized that "claims for indemnification are generally contingent on the outcome of other claims and thus may not have 'matured' by the time a defendant is required to file its answer." *Sov Apex LLC v. Gateway Funding Diversified Mortg. Servs., LP*, 09CV11851–NG, 2010 WL 1839417, at *4 (D.Mass. May 6, 2010). The underlying action by RTR against H & C involved claims of gross negligence and willful misconduct on the part of H & C. If RTR had been successful in these claims, H & C would have had no basis to claim indemnification. Thus, RTR's obligation to indemnify H & C did not arise until *after* the court issued its decision dismissing the underlying case. (Agreement 12, App'x B ("H & C shall not have any liability . . . to [RTR] for or in connection with the engagement of H & C, except for any such liability . . . that is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from H & C's gross negligence, willful misconduct or unlawful activities.").) Accordingly, H & C could not have brought this action until now, and its claims cannot be dismissed on the ground that they should have been included as part of the prior litigation.[8]

 RTR'S *res judicata* is similarly unavailing. "Under the federal law of *res judicata*, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir.2005) (quoting *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996)). For *res judicata* to apply, three factors must be present: (1) the prior action must have resulted in a final judgment; (2) the prior action and the current action must assert identical claims; and (3) the prior action and the current action must have identical parties. *Id.* at 127. RTR argues that, as H & C dedicated five pages of its memorandum in support of its motion for attorneys' fees to the indemnification provision of the Agreement and that motion was denied and affirmed on appeal, *res judicata* bars H & C's claims.

 Again, this argument is specious. The principles of *res judicata* simply do not apply here.

> [W]here the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

**8.** Ironically, in the underlying action, RTR opposed H & C's claim for indemnification on the ground that it was premature. This court eventually agreed. Now RTR contends that pursuit of the indemnification claim in the underlying action was *not* premature, but mandatory. Because H & C is entitled to judgment on substantive grounds, it is not necessary for the court to address H & C's argument that RTR should be deemed estopped from taking these inconsistent positions.

*C.I.R. v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *see Pike v. Freeman,* 266 F.3d 78, 92 (2d Cir.2001) (Sotomayor, J.) (stating that the indemnification claim "did not arise until the [arbitration award] was granted and the district court proceedings were prosecuted"). The language of the indemnification provision specifically provides that is it inapplicable when a court of competent jurisdiction determines that H & C's conduct was grossly negligent. As the prior action involved claims of gross negligence brought by RTR against H & C, RTR's obligations under the contract would not be clear until a final judgment issued in the prior action. Accordingly, H & C's claims for indemnification did not ripen until final judgment in the prior action. As with the compulsory counterclaim analysis, until the prior action reached a final judgment in which H & C was not found to have engaged in grossly negligent conduct, H & C could not have brought this current action for indemnification.

Further undermining RTR's arguments for *res judicata* or claim preclusion, this court explicitly noted in its decision on attorneys' fees in the prior action that it was *not* considering H & C's indemnification arguments. *RTR Techs., Inc.,* 2012 WL 601913, at *2 ("Similarly, the indemnification provision contained in RTR's agreement with H & C might possibly provide the basis for an award of fees and costs in an independent action, but not as part of the current motion."). Once more, H & C objects to RTR trying to have it both ways, insisting in the prior action that H & C's indemnity claims could not be addressed until final judgment and then arguing in the current case that *res judicata* precludes H & C's claim now.

 Finally, RTR's third argument asserts that, under the doctrine of accord and satisfaction, H & C's claims were ex-

tinguished when it accepted and deposited RTR's check. As noted above, after the First Circuit affirmed this court's award of statutory fees, RTR sent HSC a check for $15,341.46 with the words "full payment and satisfaction," accompanied by a letter stating that the check represented "payment in full" of the RTR's obligations to H & C. According to RTR, once H & C accepted and cashed that check, its claim for indemnity was extinguished. H & C counters that the acceptance of a court-ordered payment cannot operate as a release of claims not yet addressed by that court.

 H & C is clearly correct. To begin with, "an accord and satisfaction requires a voluntary, mutually assented to exchange of money for a release." *Malave v. Carney Hosp.,* 170 F.3d 217, 222 (1st Cir.1999). As H & C points out, there is no evidence before the court of voluntariness or mutuality. Equally importantly, there is no evidence of consideration. *Schoonmaker v. Lawrence Brunoli, Inc.,* 265 Conn. 210, 277, 828 A.2d 64 (2003)("Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration.") (italicization and quotations omitted). Furthermore, an accord and satisfaction reflects an agreement reached on a disputed amount. *Id.* That is also not the case here. The court-ordered amount of the check cannot be characterized as a "disputed" amount. There has been no contact, much less negotiation, between the parties since the prior action. Thus, H & C's cashing of the check paid to it pursuant to a court order on statutory costs cannot constitute an accord and satisfaction on the indemnification issue.

In sum, the indemnity provision in the Agreement required RTR to cover the at-

torneys' fees and unreimbursed costs incurred by H & C in defending itself against the claims in the underlying action brought by both RTR, a first party, and the Bergers, a third party. Furthermore, the indemnity claims were not compulsory counterclaims, as they did not ripen until after a final, nonappealable decision was reached; neither are the claims barred by the doctrine of *res judicata*, as the court expressly stated it was not considering them. Accordingly, H & C is entitled to summary judgment on both counts.

## IV. *CONCLUSION*

For the forgoing reasons, on September 29, 2014, the court DENIED Defendant's Motion to Dismiss (Dkt. No. 12) and ALLOWED Plaintiff's Cross–Motion for Summary Judgment (Dkt. No. 20). On or before February 5, 2015, counsel for H & C shall submit to the court supplemental materials specifying the exact amount of fees and expenses incurred in prosecuting this action, as well as for the underlying one, along with affidavits attesting to the reasonableness of the hourly rates charged by its attorneys. Thereafter, counsel for RTR shall respond on or before March 9, 2015. The court will consider these submissions on the papers and proceed to enter final judgment.

It is So Ordered.