A. WILLIAM KENNEDY & another[1] vs. SCOTT GOFFSTEIN.

No. 03-P-676.

Suffolk. April 16, 2004. - October 5, 2004.

Present: ARMSTRONG, C.J., DREBEN, & KANTROWITZ, JJ.

*Limitations, Statute of. Negligence,* Accountant. *Accountant. Taxation,* Income
tax returns.

At the trial of a civil complaint alleging malpractice against an accountant, a
Superior Court judge erred in ruling that the statute of limitations began to
run a few days after the date on which the plaintiffs learned that their tax
return would be audited, where determining when the plaintiffs suffered
appreciable harm so as to trigger the commencement of the statute of
limitations was a factual question that should have been submitted to the
jury. [235-236]

CIVIL ACTION commenced in the Superior Court Department on
July 5, 2000.

The case was tried before *Linda E. Giles, J.*

*Edward J. Mulligan* for the plaintiffs.

*Nancy M. Reimer* for the defendant.

KANTROWITZ, J. At issue is when the statute of limitations
commenced on a malpractice claim against a certified public
accountant. The statute begins to run at the point when the
plaintiff discovers that he has suffered harm due to the actions
of the defendant. See *Lyons* v. *Nutt,* 436 Mass. 244, 247 (2002).
The specific date that "the necessary coalescence of discovery
and appreciable harm occur[s]," *id.* at 251, quoting from *Cantu*
v. *St. Paul Cos.,* 401 Mass. 53, 57 (1987), is a factual question,
which, in this case, should have been submitted to the jury. As
it was not, we reverse.

*Background.* In 1993, Brian Murphy, an employee of the
defendant, prepared the Kennedys' 1992 income tax return. In

[1]Helen P. Kennedy.

1995, this return was audited by the Internal Revenue Service (IRS).[2] Murphy (then no longer an employee of the defendant) was granted a power of attorney by Kennedy[3] to handle the audit. On March 14, 1997, the IRS issued a letter of proposed adjustments in the amount of $231,808 for the 1992 tax year. On August 19, 1997, the IRS issued a letter indicating its revised proposed adjustments reducing the amount owed by $27,947 and informing Kennedy that additional documentation was needed for further deductions to be allowed. In September, 1997, Kennedy sought the advice of another tax expert. After reviewing Kennedy's documents pertaining to the tax returns and audit, the expert opined that the defendant made an error in preparing the return and that it was the defendant's error that triggered the audit and resulted in the proposed adjustments.[4] On November 4, 1997, the IRS issued a notice of deficiency.[5] Kennedy filed a claim against the defendant on July 5, 2000, alleging negligent tax preparation.

The trial commenced on January 13, 2003. A jury was impaneled and both sides presented opening statements.[6] At the close of the opening statements, the judge directed a verdict[7] in favor

---

[2]On September 4, 1995, Murphy sent Kennedy a letter informing him that his 1992 and 1993 tax returns would be audited on October 4, 1995. Murphy had also prepared the 1993 return. Claims related to that return were dismissed against the defendant because it was prepared by Murphy after he had left the defendant's employ.

[3]We refer to the Kennedys in the singular, as the alleged errors in the tax return concerned William Kennedy's business-related income and expenses, and, on the record before us, it appears that only he was involved in the various communications with the defendant concerning the return.

[4]Kennedy's view, prior to his seeking other expert counsel, was that his 1992 return was "very accurate" and that the agent for the IRS was either "lieying [*sic*] or made a big mistake."

[5]The notice indicated the IRS had determined that Kennedy owed $181,879 in additional taxes and penalties for 1992, and that, if he wanted to contest the determination in court before making any payment, he had ninety days from the date of the letter to file a petition with the United States Tax Court for a redetermination of the deficiency.

[6]In Kennedy's opening statement, the jury were told that Kennedy's new expert was able to reduce the assessment amount to a fraction of the original liability.

[7]Kennedy claims error in that the judge did this sua sponte. At the close of the opening statements, the judge asked Goffstein's counsel, "[D]o you want

of Goffstein on the basis that the complaint was barred by the statute of limitations.[8]

*The law.* The applicable time period for a claim of malpractice by a certified public accountant is three years. G. L. c. 260, § 4. A claim based in negligence accrues at the time a plaintiff is harmed by a defendant's negligence. See *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 741-742 (1978). Massachusetts is a "discovery" State; as such, the statute of limitations begins to run when a plaintiff "knows or reasonably should know that he or she has sustained appreciable harm as a result of the [defendant's] conduct."[9] *Lyons* v. *Nutt*, 436 Mass. at 247, quoting from *Williams* v. *Ely*, 423 Mass. 467, 473 (1996). The discovery rule has been applied in both legal and medical malpractice cases, see *Franklin* v. *Albert*, 381 Mass. 611, 618-619 (1980), and is no less applicable here. See *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980) (accounting malpractice). See also Annot., Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant, 7 A.L.R. 5th 852, 914, 932 (1992).

"In most instances, the question when a plaintiff knew or should have known of [his] cause of action is one of fact that will be decided by the trier of fact[;] . . . [t]he appropriate standard to be applied when assessing knowledge or notice is that of a 'reasonable person in the plaintiff's position.' " *Taygeta*

---

to be heard? Do you have a motion here?" To which counsel responded, "Yes. I move for summary judgment on the basis of the statute of limitations." The judge thereafter stated, "I will construe your motion not as one for summary judgment because I don't think it's appropriate at this time, but I will construe it as a directed verdict at the close of the openings." After providing the parties an opportunity to present their respective views, the judge issued her ruling.

[8] The judge observed that Kennedy was "under an obligation to know or by an easy amount of investigation should have known that the 1992 tax return prepared by Goffstein and Associates was a problem. So as early as a few days after September 4, 1995, when he received [the letter from Murphy indicating that 1992 would still be audited] he was clearly on notice . . . that there was a problem with the 1992 tax return. He waited past that three years. As a matter of law, there is a statute of limitation problem."

[9] An accountant, like an attorney or a doctor, "is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so." *Hendrickson* v. *Sears*, 365 Mass. 83, 90 (1974).

*Corp.* v. *Varian Assocs., Inc.*, 436 Mass. 217, 229 (2002), quoting from *Riley* v. *Presnell*, 409 Mass. 239, 245 (1991).

In addition to the element of discovery, the plaintiff must have suffered appreciable harm before the statute begins to run. See *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. at 109. At its root meaning, appreciable harm is "injury, loss or detriment" that is "capable of being measured or perceived." See Black's Law Dictionary 97, 722 (7th ed. 1999).

The point at which appreciable harm occurs will vary with the facts of the case. For example, in some cases, the incurring of additional expense in hiring an expert to address the damage done by a negligent defendant has been recognized as appreciable harm. See, e.g., *Cantu* v. *St. Paul Cos.*, 401 Mass. at 57-58 ("necessary coalescence of discovery and appreciable harm occurred" when plaintiff retained attorney and incurred legal fees; "[plaintiff] had been harmed by having to pay legal fees to [attorney]. Accord *Levin* v. *Berley*, 728 F.2d 551, 554 [1st Cir. 1984] [retention of another attorney is harm in the form of additional legal fees]; *Whitcomb* v. *Pension Dev. Co.*, 808 F.2d 167, 170-171 [1st Cir. 1986] [same as to retention of accountants]"); *Pelletier* v. *Chouinard*, 27 Mass. App. Ct. 92, 95 (1989). See also *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985) (plaintiffs in legal malpractice action sustained appreciable harm when legal action against them in underlying suit commenced; "[w]hatever the ultimate result of [the underlying] case would be, it was then clear that the [malpractice plaintiffs] would incur substantial legal expenses . . ."). Contrast *Eck* v. *Kellem*, 51 Mass. App. Ct. 850, 855 (2001) (statute of limitations in legal malpractice action did not start to run until judgment entered in underlying case, as "until that time it could not be said that [plaintiff] suffered any cognizable harm").

In contrast to our fact-based approach, a number of States have adopted a bright-line rule as to when the statute of limitations begins to run in cases concerning malpractice in the preparation of tax returns. "Most courts, and particularly those that apply the discovery rule in determining when a cause of action accrues, have adopted the date of formal tax assessment as the accrual date in cases similar to this." *CDT, Inc.* v. *Addison,*

*Roberts & Ludwig, C.P.A., P.C.,* 198 Ariz. 173, 179 (Ariz. Ct. App. 2000).[10] "The deficiency assessment serves as a finalization of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and the point at which the accountant's alleged negligence has caused harm to the taxpayer." *Id.* at 180, quoting from *International Engine Parts, Inc.* v. *Feddersen & Co.,* 9 Cal. 4th 606, 617 (1995). Cf. *EMC Corp.* v. *Commissioner of Rev.,* 433 Mass. 568, 573-574 (2001) (statute of limitations for requesting abatement of corporate excise tax began to run when notice of assessment sent; until that time, taxpayer not "aggrieved" within meaning of the statute).

Conversely, in Florida, the courts have established a rule whereby the statute of limitations does not start to run until the Tax Court ultimately decides the issue.

"If we were to accept [the argument that the statute begins to run upon the deficiency determination], the [taxpayers] would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal. Such a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the [taxpayers] would be asserting that the deduction [the accountant] advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that [the accountant's] advice was malpractice. To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified."

*Peat, Marwick, Mitchell & Co.* v. *Lane,* 565 So. 2d 1323, 1326

---

[10]Accord *Thomas* v. *Cleary,* 768 P.2d 1090 (Alaska 1989); *Curtis* v. *Kellogg & Andelson,* 73 Cal. App. 4th 492, 499-502 (1999); *Streib* v. *Veigel,* 109 Idaho 174 (1985); *Leonhart* v. *Atkinson,* 265 Md. 219 (1972); *Chisholm* v. *Scott,* 86 N.M. 707 (Ct. App. 1974); *Ackerman* v. *Price Waterhouse,* 156 Misc. 2d 865, 870-877 (N.Y. Sup. Ct. 1992); *Snipes* v. *Jackson,* 69 N.C. App. 64, 68-71 (1984); *Gray* v. *Estate of Barry,* 101 Ohio App. 3d 764 (1995); *Atkins* v. *Crosland,* 417 S.W.2d 150 (Tex. 1967); *Mills* v. *Garlow,* 768 P.2d 554 (Wyo. 1989).

(Fla. 1990). Massachusetts has generally rejected this approach. See, e.g., *Taygeta Corp.* v. *Varian Assocs., Inc.*, 436 Mass. at 229 ("plaintiff need not know the full extent of [his] injury for a cause of action to accrue and for the statute of limitations to begin running").

*Discussion.* While reference to legal and medical malpractice cases is instructive, there is one fundamental difference in dealing with malpractice on the part of an accountant; namely, "there is no loss or injury unless a third party, the I.R.S., decides to assess a tax deficiency." *Snipes* v. *Jackson*, 69 N.C. App. 64, 71 (1984). Thus, while an accountant may have clearly committed a negligent act in preparing a tax return, often there is no injury, cause of action, or statute of limitations issue, until the IRS scrutinizes the taxpayer's return.[11]

While it may be appealing to establish a firm event (whether it be the issuance of the notice of deficiency, the hiring of another accountant or attorney, or the final decision of the Tax Court) to trigger the start of the running of the statute, there are just too many different possible fact scenarios in the complicated, cumbersome, maze-like world of taxes and accountants, to establish a bright-line, one-size-fits-all rule. For example, in one case it might be readily apparent from an audit letter that malpractice had been committed and that the IRS would be imposing penalties. In a similar vein, knowledge of negligence and consequent harm might become evident after the audit was completed. At the other end of the spectrum, there might exist a close case where a taxpayer justifiably believed that no money was owed, a belief dashed only upon an adverse decision of the Tax Court.

In each scenario, a different date would be appropriate for triggering the statute of limitations. We believe, thus, the wiser course, consistent with our past practice, is to present the matter to the fact finder for a determination as to when Kennedy's cause of action accrued.[12] See, e.g., *Riley* v. *Presnell*, 409 Mass. at 240 ("We . . . hold that the question when a plaintiff knew

---

[11]We recognize exceptions to this observation. For instance, overpayment of taxes, unnoticed by the IRS, may entail malpractice.

[12]We note that, under any of the bright-line "rules" discussed above, Kennedy's suit would be deemed timely. The suit was filed on July 5, 2000, within three years of the IRS notice of deficiency dated November 4, 1997,

or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact. The evidence in this case raises a genuine issue of material fact as to whether the plaintiff knew or should have known that he may have been injured by [the defendant]").

On the basis of the foregoing, we conclude that the judge erred in ruling that the statute began to run a few days after September 4, 1995, when Kennedy learned that his 1992 tax return would be audited. The issue is when Kennedy suffered appreciable harm so as to trigger the commencement of the statute of limitations, a question for the jury to determine.[13]

Accordingly, the judgment is reversed and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

and within three years of Kennedy's having hired a new accountant in September, 1997. On the other hand, Kennedy's suit would be deemed untimely were it determined that either the Murphy letter dated September 4, 1995, informing Kennedy that the tax return would be audited, or the IRS's first proposed adjustment letter, dated March 14, 1997, was the triggering event. Other potential dates which, depending on the evidence, could have triggered the statute, and which would render the suit untimely include June 20, 1995, October 12, 1995, and February 8, 1996, when Kennedy received requests for information from the IRS.

[13]Given our decision, we need not reach Kennedy's second claim on appeal. See note 7, *supra.* See generally *Hubert* v. *Melrose-Wakefield Hosp. Assn.*, 40 Mass. App. Ct. 172, 176 (1996); *Island Transp. Co.* v. *Cavanaugh*, 54 Mass. App. Ct. 650, 654 (2002).