IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILLIAM R. COULTER; MARK TKACH; and MILLS A. BROWN,
*Plaintiffs/Appellants*,

*v.*

GRANT THORNTON, LLP, *Defendant/Appellee*.

No. 1 CA-CV 14-0625
FILED 1-3-17

Appeal from the Superior Court in Maricopa County
No. CV2011-020270
The Honorable J. Richard Gama, Judge *Retired*

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Aiken, Schenk, Hawkins & Ricciardi, PC, Phoenix
By Joseph A. Schenk, J. Tyrrell Taber, Michael R. Devitt
*Counsel for Plaintiffs/Appellants*

Bryan Cave LLP, Phoenix and Kansas City, MO
By Lawrence G. Scarborough, James D. Smith, Craig S. O'Dear,
Fred L. Sgroi
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill (retired) joined.

---

**C A T T A N I**, Judge:

**¶1**      William R. Coulter, Mark Tkach, and Mills A. Brown (collectively, "Appellants") raise an issue of first impression relating to when accountant malpractice claims accrue for purposes of the statute of limitations. Consistent with the discovery rule, we hold that determining the accrual date is a fact-based inquiry that turns on when a party knew or reasonably should have known of facts establishing a basis for the claim. Accordingly, and for reasons that follow, we reverse the superior court's ruling dismissing Appellants' claims against the accounting and tax advisory firm Grant Thornton, LLP for breach of fiduciary duty, professional negligence, negligent misrepresentation, common law fraud, aiding and abetting, and racketeering. We affirm the merits-based dismissal of Appellants' breach of contract and breach of the implied covenant of good faith claims, and we remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**      In 2000, Appellants hired Grant Thornton to implement strategies intended to reduce their income tax liability arising from their financial interests in automobile and motorcycle dealerships in Arizona. Upon the recommendation of Blair Stover, a principal with Grant Thornton, Appellants each established an "ESOP/S" structure, which involved the creation of a single-owner employee stock ownership plan ("ESOP") holding the stock of a related S corporation.[1] Appellants each used the ESOP/S structure in the 2002 tax year.

---

[1]    The ESOP/S strategy promoted by Grant Thornton attempted to avoid taxation by having an operating company pay management fees to a newly created management company. *See United States v. Stover*, 650 F.3d 1099, 1104 (8th Cir. 2011) (describing the ESOP/S structure). The management company would elect subchapter S status and create an ESOP

¶3 The IRS disapproved of the ESOP/S structure and issued a "Notice of Deficiency" to Coulter and Tkach in 2006 and 2007. The notices reflected millions of dollars in tax deficiencies and "accuracy related" penalties under Internal Revenue Code ("I.R.C.") § 6662. 26 U.S.C. § 6662.[2] Stover assured Appellants that they would ultimately prevail against the IRS, and Coulter and Tkach challenged the deficiency determinations and penalties in United States Tax Court. Following lengthy litigation, they settled with the IRS in 2011, agreeing to pay taxes on the income that had been shielded from taxation by the ESOP/S structure.

¶4 Brown did not receive a notice of deficiency with respect to the ESOP/S structure, but he received a notice of deficiency with respect to a Roth/S structure that he had likewise implemented on Stover's recommendation. Brown entered into a "Closing Agreement" with the IRS in July 2011, under which he agreed to pay additional excise taxes in the amount of $254,938.20 as a result of his use of the Roth/S structure and to have all the monies used to fund his Roth IRA between 2002 and 2008 taxed as ordinary income.

¶5 In November 2011, Appellants filed a complaint in superior court against Grant Thornton and other defendants.[3] Grant Thornton moved to dismiss several of Appellants' claims as barred by applicable statutes of limitations. The superior court granted the motion and dismissed those claims. Grant Thornton then filed a motion for partial summary judgment on Coulter and Tkach's breach of contract claim, which the court also granted. Finally, Grant Thornton filed a motion to dismiss

---

to hold the company's stock. *Id.* The ESOP's sole beneficiary would be the owner of the operating company. *Id.* Because an ESOP's income is not subject to taxation until distribution, the ESOP/S scheme would, if allowed, indefinitely avoid or defer the recognition of taxable income. *Id.*

[2] Absent material revisions after the relevant date, we cite a statute's current version.

[3] Stover left Grant Thornton in 2001. Appellants followed him as clients to his new firm, Kruse Mennillo, LLP. In addition to Stover and Kruse Mennillo, the complaint also named Nevada Corporation Associates, Inc., a company that provided management services for the tax structures. Appellants stipulated to dismiss their claims against Kruse Mennillo and Stover, but Nevada Corporation defaulted. At the time Appellants filed their notice of appeal, the claim against Nevada Corporation remained pending.

or, in the alternative, for summary judgment on Appellants' remaining claims for fraudulent concealment and contractual bad faith. The superior court similarly granted this motion.

**¶6** The court then entered final judgment under Arizona Rule of Civil Procedure ("Rule") 54(b) and awarded Grant Thornton $495,231.60 in attorney's fees. This timely appeal followed.

## DISCUSSION

### I. Dismissal Based on the Statute of Limitations.

**¶7** We review de novo a dismissal under Rule 12(b)(6) for failure to state a claim. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). Dismissal under Rule 12(b)(6) is only appropriate if, assuming the truth of all well-pleaded factual allegations, "as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at 356, ¶¶ 8–9 (alteration in original) (citation omitted). Given our preference to resolve claims on their merits, "the statute of limitations defense is not favored." *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 175, ¶ 5 (App. 2000) (quoting *Logerquist v. Danforth*, 188 Ariz. 16, 22 (App. 1996)). Nevertheless, "claims that are clearly brought outside the relevant limitations period are conclusively barred." *Montaño v. Browning*, 202 Ariz. 544, 546, ¶ 4 (App. 2002).

#### A. First Order of Dismissal.

**¶8** Appellants argue that the superior court erroneously dismissed on limitations grounds their claims for breach of fiduciary duty, professional negligence, negligent misrepresentation, common law fraud, aiding and abetting, and racketeering. Because there is a question of fact as to when Appellants discovered or should have discovered that they were injured by Grant Thornton's actions, we reverse the superior court's dismissal of these claims.

**¶9** A two-year limitations period applies to claims for breach of fiduciary duty, professional negligence, and negligent misrepresentation. *See* A.R.S. § 12-542; *Sato v. Van Denburgh*, 123 Ariz. 225, 227 (1979) (professional negligence); *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 599 (App. 1994) (negligent misrepresentation); *Crook v. Anderson*, 115 Ariz. 402, 403 (App. 1977) (breach of fiduciary duty). A three-year limitations period applies to claims for common law fraud. *See* A.R.S. § 12-543(3); *Coronado Dev. Corp. v. Superior Court*, 139 Ariz. 350, 352 (App. 1984). Likewise, a

4

three-year statute of limitations applies to claims brought under Arizona's racketeering statute. *See* A.R.S. § 13-2314.04(F).

**¶10** Accrual of these claims is governed by the discovery rule, which provides that "a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct." *Anson v. Am. Motors Corp.*, 155 Ariz. 420, 423 (App. 1987); *see also Commercial Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 254 (App. 1995). We review for an abuse of discretion a superior court's factual determinations regarding the exercise of reasonable diligence, but we review de novo the question of when a cause of action accrues if the determination is based on a legal issue rather than on disputed facts. *Montaño*, 202 Ariz. at 546, ¶ 4.

**¶11** Here, the superior court concluded that Appellants' claims accrued when the IRS issued notices of deficiency in 2006 and 2007, and that the claims (other than for breach of contract and breach of the implied covenant of good faith) were thus time-barred. The court relied on *CDT v. Addison*, in which this court addressed accrual of a cause of action for accountant malpractice alleged to have caused an assessment of delinquent taxes, interest, and penalties against the taxpayer. 198 Ariz. at 175, ¶ 5. There, the taxpayer had sued its accounting firm more than two years (the relevant limitations period) after the taxing authority's audit that exposed the taxpayer's underpayment (and of which the taxpayer was informed), but within two years of the taxing authority's formal adoption of the auditor's recommendation and assessment in a "Notice of Determination." *Id.* at ¶¶ 3–4. This court held that, as between the date a taxing authority notifies a taxpayer of potential liability and the date the taxing authority issues its final determination, the latter controlled for statute of limitations purposes; there was no "definitive assessment of tax liability against [the taxpayer]" until the taxing authority issued its formal assessment. *Id.* at 174–75, 179, ¶¶ 3, 20–21.

**¶12** The instant case presents a different question, however. *CDT* did not address the scenario in which, as here, the taxpayer continues to consult with the accountant after the IRS's issuance of a notice of deficiency, and continues to rely on the accountant's advice in challenging the IRS's determination in the tax court.

**¶13** Although Arizona appellate courts have not addressed this issue, courts in other jurisdictions have done so and have taken varied approaches. Some courts have concluded that the dispositive date in such a case is the date the taxpayer's liability is ultimately resolved — that is, after

the final decision in the tax appeal—rather than when the IRS issued its final notice of deficiency. *See Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1325 (Fla. 1990); *Clark v. Deloitte & Touche LLP*, 34 P.3d 209, 216, ¶ 23 (Utah 2001). Other courts have adopted a similar bright-line rule using the date of the IRS's notice of deficiency, regardless whether the taxpayer appeals the IRS's determination and regardless how long that appeal may take. *See, e.g.*, *Curtis v. Kellogg & Andelson*, 86 Cal. Rptr. 2d 536, 542 (App. 1999); *Beane v. Dana S. Beane & Co., P.C.*, 7 A.3d 1284, 1289 (N.H. 2010). Finally, other courts have determined that neither of those dates is necessarily dispositive and have instead adopted a fact-based approach focused on when the plaintiff knew or should have known of the negligence and resulting injury under the facts of the particular case. *See Kennedy v. Goffstein*, 815 N.E.2d 646, 650 (Mass. App. Ct. 2004). We are persuaded that neither bright-line rule adequately addresses discovery of a cause of action for accounting malpractice and thus adopt the fact-based approach.

¶14        Although bright-line rules are often useful, there are compelling reasons to forego a rule under which a malpractice claim necessarily accrues immediately upon issuance of the taxing authority's final determination (before any appeal). As the Florida Supreme Court pointed out in *Peat Marwick*, commencing the limitations period at the time of the IRS's notice of deficiency would mean that a plaintiff would be required to file an accounting malpractice action asserting that the tax advice was improper, even if the taxpayer reasonably continued to rely on the accountant's advice to challenge the IRS's determination in a tax appeal. 565 So. 2d at 1326. "To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified." *Id.* And under these circumstances, as the Utah Supreme Court noted in *Clark*, "there [was] no loss or injury unless a third party, the [Tax Court], decide[d] to assess a tax deficiency." 34 P.3d at 216, ¶ 23 (citation omitted and alterations in original). Accordingly, where the taxpayer and the accountant reasonably continue to believe that the accounting advice was correct (and the taxing authority in error), the cause of action for accounting malpractice should not necessarily accrue when the IRS issues a notice of deficiency. *See Peat Marwick*, 565 So. 2d at 1326.

¶15        There are similarly compelling reasons for rejecting a bright-line rule adopting the conclusion of a tax appeal as the relevant accrual date. If, for example, an accountant or lawyer has acknowledged that the challenged advice was improper, or if the taxpayer obtained a second opinion advising that the advice was improper, a fact-finder could conclude that the taxpayer was on notice of a viable accounting malpractice claim

before a final tax court determination. *See Kennedy*, 815 N.E.2d at 650 (noting that "knowledge of negligence and consequent harm might become evident after the audit was completed").

¶16 A fact-based approach more appropriately addresses the relevant circumstances in any given case, and is consistent with how we have addressed analogous claims involving attorney malpractice. *See Lewis & Roca*, 183 Ariz. 250, 257–58 (holding that the limitations period for filing a claim against an attorney who had advised an insurer to deny a coverage claim did not commence when a lawsuit was filed against the insurer, but instead began when a court ruling in the coverage lawsuit made clear that the position advanced by the lawyer was incorrect).

¶17 Applying that approach here, we conclude that the superior court erred by finding that the limitations period necessarily commenced upon the IRS's issuance of a notice of deficiency. Instead, there remains a fact question regarding whether Appellants reasonably continued to rely on Stover's reassurances, and when they discovered (or should have discovered) that the accounting advice was improper and the IRS's position would be upheld on appeal. We thus reverse the superior court's dismissal of Appellants' claims for breach of fiduciary duty, professional negligence, and negligent misrepresentation on statute of limitations grounds, and we remand to allow a jury to determine the appropriate accrual date for Appellants' claims.

### B. Second Order of Dismissal.

¶18 After the superior court dismissed the initial tort claims, Appellants amended their complaint in November 2011 to add a claim for fraudulent concealment, asserting that "[d]uring the period from 2001 through the present, Defendants, and each of them, fraudulently concealed from Plaintiffs the fact that they were engaged in a scheme to profit from selling invalid and worthless tax structures to unsuspecting clients in exchange for the payment of exorbitant fees." The superior court dismissed Appellants' claim for fraudulent concealment as barred by the three-year statute of limitations. *See* A.R.S. § 12-543(3).

¶19 The statute of limitations for a fraudulent concealment claim begins to run "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Mister Donut of Am., Inc. v. Harris*, 150 Ariz. 321, 323 (1986); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 496, ¶ 87 (2002) (as corrected) (discussing elements of fraudulent

concealment claim). This type of claim includes "[f]raud practiced to conceal a cause of action." *Acton v. Morrison*, 62 Ariz. 139, 144 (1945).

¶20 As with the previously-discussed claims, the parties dispute when Appellants' claim for fraudulent concealment accrued, with Grant Thornton focusing in particular on Appellants' knowledge of a complaint filed by the United States Department of Justice against Stover in the District Court for the Western District of Missouri, *United States v. Stover*, 731 F. Supp. 2d 887 (W.D. Mo. 2010), *aff'd*, 650 F.3d 1099 (8th Cir. 2011). In that case, the District Court in 2010 enjoined Stover from promoting certain tax schemes, including the ESOP/S. *See Stover*, 731 F. Supp. 2d at 914.

¶21 Appellants were aware of this lawsuit and reviewed a copy of the complaint in June 2008. Grant Thornton thus argues that Appellants' claim for fraudulent concealment accrued "at the very latest when they read the complaint in *United States v. Stover*." Appellants argue that their claim did not accrue until the District Court issued its decision against Stover in August of 2010. As with our ruling regarding the other statutes of limitation, we conclude that the determination of when the fraudulent concealment claim accrued is a fact question that must be resolved by a jury.

¶22 The filing of a complaint against Stover did not resolve whether he had in fact committed fraud. Given Stover's continuing representations that Appellants would prevail in their tax case and that the charges against him were not well founded, we conclude that the statute of limitations on Appellants' fraud claim did not necessarily commence when Appellants received a copy of the government's complaint against Stover. Instead, there is a fact question regarding when Appellants discovered or should have discovered that the government's claims against Stover were meritorious.[4] Accordingly, we reverse the superior court's ruling

---

[4] As with the professional malpractice claims, there may be circumstances under which a party may be deemed to be on notice of a fraud claim prior to the conclusion of litigation underlying the basis for the claim. But here, Stover did not admit liability, and there is no indication of facts that necessarily established that Appellants should have known the federal government would prevail in its complaint against Stover. *Compare Lewis & Roca*, 183 Ariz. at 254 (defendant law firm advised plaintiff insurance company to deny coverage on an insurance claim submitted by a third party; although the insurance company sustained appreciable damage when it incurred costs for attorney's fees in a coverage suit filed by the third party, the insurance company had no reason to know that such

dismissing the claim for fraudulent concealment on statute of limitations grounds.

## II.    Summary Judgment on Breach of Contract Claim.

**¶23**        Coulter and Tkach also challenge the superior court's grant of summary judgment in favor of Grant Thornton on the merits of their breach of contract claim.  Summary judgment is appropriate if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 54(a).  We review de novo the superior court's grant of summary judgment, including its assessment of the existence of factual disputes and its application of the law.  *See Cal. Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 208 Ariz. 416, 418, ¶ 5 (App. 2004); *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124–25 (App. 1997).

**¶24**        Coulter and Tkach alleged that Grant Thornton breached the indemnity clause of their engagement agreements by failing to reimburse them for "penalties" the IRS assessed for their use of the ESOP/S structure. The parties' engagement letter stated:

> [I]n the event that either the Internal Revenue Service or the State of Arizona assess any civil negligence or fraud *penalty* which is related to any position, transaction, or structure which is the subject of our technical advice, Grant Thornton, LLP shall reimburse and indemnify you and your related entities for the full amount of such *penalty(s)*.

(Emphasis added).

**¶25**        After the IRS issued its notice of deficiency, the agency offered to settle with Coulter and Tkach if they would agree to pay an amount that would be computed as if the income they had placed in the ESOPs (and that therefore had not been taxed) had been included in income in 2002, plus penalties.  But the IRS subsequently dropped its demand for penalties, and Coulter and Tkach ultimately paid only back taxes and interest and did not pay I.R.C. penalties.

**¶26**        On appeal, Coulter and Tkach argue that the reference to "penalty" in the engagement letters was not intended to carry a restrictive definition and that the term encompasses back taxes and interest.  They thus

---

defense costs were the direct result of the defendant law firm's negligence until the court denied the insurance company's motion for summary judgment in the coverage lawsuit).

assert that Grant Thornton is contractually liable to them for "promised tax savings that were not achieved." But this reading is inconsistent with the plain language of the indemnity clause in the engagement letter.

¶27 The engagement letters referenced penalties assessed for "civil negligence or fraud," which parallels IRS penalties under I.R.C. § 6662 for underpayment of tax because of a taxpayer's "[n]egligence or disregard of rules or regulations," "substantial understatement of income tax," or "substantial valuation misstatement."[5] Thus, the plain language of the engagement agreements only required Grant Thornton to indemnify Coulter and Tkach for "penalties," and there were no penalties assessed in this case.

¶28 Appellants argue that, based on a sworn declaration submitted by their expert witness, "the amounts that Coulter and Tkach were required to pay to the IRS greatly exceeded the amount of taxes that they would have owed if they had not used [Grant Thornton]'s ESOP/S structure." But Appellants do not assert that the amount they paid included an I.R.S. penalty. The indemnity clause—the only contract term Appellants allege Grant Thornton breached—did not guarantee the amount of tax liability. It merely provided that the taxpayer would pay no more than the tax owing, because Grant Thornton would reimburse any penalties assessed. Accordingly, Grant Thornton did not breach its indemnity obligation under the engagement agreements, and the superior court did not err by granting judgment in favor of Grant Thornton on the breach of contract claim.

### III. Summary Judgment on Breach of the Implied Covenant of Good Faith.

¶29 The superior court also granted summary judgment in favor of Grant Thornton on Appellants' claim for breach of the implied covenant of good faith. We similarly review the superior court's dismissal of this claim de novo. *See Wells Fargo*, 201 Ariz. at 482, ¶ 13. We affirm the superior court's ruling because the only alleged acts that might support this claim occurred before the parties entered into the contract, and thus Appellants'

---

[5] IRS penalties are separate from and in addition to the tax deficiency. See I.R.C. § 6662; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2584 (2012) ("The Code contains many provisions treating taxes and assessable penalties as distinct terms.").

allegations do not support a claim that Grant Thornton acted in bad faith in carrying out the contract.

¶30          Under Arizona law, there is an implied covenant of good faith and fair dealing in every contract. *See id.* at 490, ¶ 59. A party violates this covenant if he or she acts in a manner that denies the other party the "reasonably expected benefits" of the contract. *See FL Receivables Tr. 2002-A v. Arizona Mills, L.L.C.*, 230 Ariz. 160, 169, ¶ 41 (App. 2012). A party also breaches the implied covenant of good faith if he or she uses "discretion for a reason outside the contemplated range -- a reason beyond the risks assumed by the party claiming a breach." *Wells Fargo*, 201 Ariz. at 492, ¶ 66 (citation omitted).

¶31          Appellants argue that Grant Thornton did two things that constitute bad faith: (1) adopted a "poor boy" approach to the implementation of the ESOP/S structure and (2) provided Appellants' names and taxpayer identification numbers to the IRS. Preliminarily, we reject Appellants' claim that Grant Thornton engaged in bad faith by providing Appellants' identifying information to the IRS in response to a summons because, as Appellants acknowledge, compliance with a lawful court order cannot form the basis of a tort claim.

¶32          Appellants' remaining assertions regarding the alleged "poor boy" approach are similarly unavailing. Appellants argue primarily that Grant Thornton knew at the time it contracted with them that the ESOP/S structure was not valid and would not deliver the promised tax benefits. Appellants cite in particular to an email dated April 5, 2000, in which Warren Heatley, a partner in Grant Thornton's Kansas City office, complained about Stover and other Grant Thornton employees promoting multiple entities structures as a tax savings vehicle:

> These are not stupid people from a technical standpoint & they have been in the business for a long time. They were counting on not getting audited & if they did, poorly trained IRS agents. . . . I believe that Circular 230 prohibits giving advice that will succeed just because it is unlikely to be caught in an audit. I have lost a lot of respect for Al, Bob & Blair [Stover] & I wonder now that we have gotten rid [of] this issue, what is next. I am sorry to say this, but I do not trust these individuals. They did not consider the risk they were subjecting their clients or the firm to or if they did they did not care. We did not even make any serious money on this strategy.

¶33 In response to this email, Mark Johannsen, a partner in Grant Thornton's national tax office, sent an April 5, 2000 email to several partners and managers in Grant Thornton's Kansas City office, including Stover, in which Johannsen stated:

> I had hoped to have this issue behind us by now, however, for a variety of reasons we have not come to a final conclusion. We will, by the end of this month, have a final answer on how we go forward with this strategy. In the meantime I would ask that we not be out prospecting, marketing and selling more of these until we have our research concluded.

¶34 Although this correspondence may support Appellants' negligence and breach of fiduciary duty claims, the correspondence does not relate to Grant Thornton's conduct in attempting to carry out the contract to which the parties agreed. Accordingly, Appellants have not established that Grant Thornton acted in a manner to deny Appellants the benefits they reasonably expected based on the contract. *See FL Receivables*, 230 Ariz. at 169, ¶ 41. Thus, the superior court did not err by granting summary judgment on Appellants' breach of the covenant of good faith and fair dealing claim.

## IV. Attorney's Fees.

¶35 Because we have reversed the superior court's rulings regarding several of Appellants' claims, we vacate the court's award of attorney's fees to Grant Thornton, without prejudice to either party asserting or reasserting a claim for fees following the conclusion of remanded proceedings in superior court.

## CONCLUSION

**¶36**        For the foregoing reasons, we affirm in part and reverse in part the decision of the superior court.  The parties request an award of attorney's fees on appeal pursuant to A.R.S. § 12-341.01(A).  In the exercise of our discretion, we deny those requests, which may be resubmitted after resolution of the issues that remain to be addressed in the superior court.

