NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GARY B. CROSBY, et al., *Plaintiffs/Appellants*,

*v.*

MESA DESERT HEIGHTS HOMEOWNERS ASSOCIATION,
*Defendant/Appellee*.

No. 1 CA-CV 24-0003

FILED 10-10-2024

Appeal from the Superior Court in Maricopa County
No. CV2021-095577
The Honorable Peter A. Thompson, Judge

**VACACTED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Harper Law PLC, Gilbert
By Kevin Harper
*Counsel for Plaintiffs/Appellants*

Fletcher Barnes Law PLC, Phoenix
By Don C. Fletcher, Timothy H. Barnes, Sheryl L. Andrew
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Vice Chief Judge Randall M. Howe joined.

---

**P E R K I N S,** Judge:

¶1        Gary B. Crosby appeals the superior court's entry of summary judgment in favor of Mesa Desert Heights Homeowners Association ("Association"). For the following reasons, we reverse in part.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Mesa Desert Heights is a residential community subject to the 1985 Declaration of Covenants, Conditions, and Restrictions ("CC&Rs"). Consistent with the CC&Rs, the Association regulated the neighborhood's aesthetics by adopting Design Guidelines. The Design Guidelines restrict structure height to a maximum of 21 feet from the highest natural point of the lot. Gary and Innette Crosby purchased an unimproved lot in Mesa Desert Heights, intending to quickly build and sell a house.

¶3        Gary Crosby asked the Association for feedback on his preliminary architectural sketches. The Association designated the corner of the lot as its highest point, concluded that the proposed plans would violate the height restriction, and indicated the Association would prohibit any variance. Crosby disputed the conclusion because he thought an outcropping of boulders provided the highest point on the lot.

¶4        Crosby believed the Association arbitrarily enforced the Design Guidelines, so he asserted that the Design Guidelines no longer applied because the Association had not applied the Guidelines consistently. After arguing with the Association for a month, Crosby submitted final architectural plans contemplating a structure height of 25 and one-half feet to the Association for review. The Association rejected those plans in June 2021.

¶5        After the Association's rejection, Crosby retained counsel who sent a letter asking the Association to reconsider its position before litigation became necessary. The Association retained its own counsel, maintained its rejection of Crosby's proposal, and demanded in a letter that

he pay an estimated $2,000 in legal fees. Crosby refused to pay. Crosby submitted revised architectural plans that complied with the Association's understanding of the 21-foot rule in the Design Guidelines.

¶6 Later that month, the Association notified Crosby that it placed a $2,500 Special Assessment on his lot to cover "legal costs" associated with the exchange of letters about his preliminary plans. The Association cited Section 12.09 of the CC&Rs as its sole authority for the assessment; as explained below, that section enables recovery of attorney fees associated with a lawsuit. The notice informed Crosby that he could contact the Association's law firm to request a breakdown of the legal fees. Crosby demanded the Association remove the Special Assessment because he did not think Section 12.09 applied.

¶7 The Association refused to remove the Special Assessment from Crosby's Association account, and he sued to challenge the Assessment. Crosby claimed the Association lacked authority to impose the Special Assessment on his lot, that the Association breached its duty of good faith and fair dealing, and that the Special Assessment was an improper lien.

¶8 Both parties moved for summary judgment. The court granted the Association's motion, finding the Special Assessment valid under the CC&Rs and implicitly rejecting Crosby's other claims. Crosby appeals the grant of summary judgment to the Association. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶9 As an initial matter, we note that Crosby raised for the first time on appeal the Association's failure to establish a factual basis for the amount of the Special Assessment. And the Association for the first time on appeal relied on Section 11.03.01 of the CC&Rs as support for the Special Assessment. The parties waived both issues. *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) ("Legal theories must be presented timely to the [superior] court. If the argument is not raised below, it is waived on appeal.").

¶10 Summary judgment is proper when the moving party is entitled to judgment as a matter of law and no genuine issues of material fact remain. Ariz. R. Civ. P. 56(a). We review entry of summary judgment *de novo. McCaw v. Ariz. Snowbowl Resort*, 254 Ariz. 221, 225, ¶ 9 (App. 2022). We view the facts and reasonable inferences from those facts in the light most favorable to the party against whom judgment was entered. *Id.*

**I. The Lot Complied**

¶11   The CC&Rs allow the Association to place three types of assessments on the lots in the neighborhood: Regular, Capital Improvement, and Special. Regular and Capital Assessments must distribute the cost of operating and maintaining the neighborhood evenly between all lot owners. When the Association incurs costs that benefit only individual lots or arise from the behavior of an individual lot owner, the lot that caused the additional expense must pay the entire bill, which the Association levies on the owner as a Special Assessment. Specifically, Section 5.07 of the CC&Rs authorizes the Board to levy "Special Assessments . . . against a Lot and its Owner to reimburse the Association for[] costs incurred in bringing an Owner and his Lot into compliance with the provisions of this Declaration, the Bylaws, or Association Rules."

¶12   We note that the Association did not rely on Section 5.07 when imposing the Special Assessment here, and failed to cite this provision in any of its pre-litigation notices demanding that Crosby pay its legal fees. Nor did the Association identify Section 5.07 in its Answer and Counterclaim or in its litigation disclosures to Crosby. It appears the Association first identified Section 5.07 as authority for this Special Assessment in its motion for summary judgment. We nonetheless evaluate this post-hoc rationalization because the superior court did so in granting summary judgment.

¶13   The parties dispute whether the Association, within the meaning of Section 5.07, brought Crosby into compliance with the Design Guidelines by rejecting his initial plans. The Association asserts that Crosby "came into compliance with the Declaration by submitting plans" that satisfied the height restriction after initially submitting plans that would have violated the Design Guidelines. But the lot always complied with the height restriction because no structure on the lot ever exceeded 21 feet — there was no structure on the lot at all when Crosby sought approval. The Association cannot "bring[]" a compliant lot into compliance. The Association cannot rely on Section 5.07 as authority for recovering its legal fees.

**II. Pre-litigation Dispute**

¶14   Section 12.09 of the CC&Rs reads: "In the event any action is instituted to enforce any of the provisions contained in this Declaration, the Bylaws, or Association Rules, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment reasonable attorneys' fees and costs of suit." The parties dispute whether

Crosby initiated an "action" by hiring counsel who advocated for Crosby's initial plans in communications with the Association.

**¶15**       "CC&Rs constitute a contract." *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000). "Our purpose in interpreting a contract is to ascertain and enforce the parties' intent" for which we look "to the plain meaning of words as viewed in the context of the contract as a whole." *ELM Retirement Center, LP v. Callaway*, 226 Ariz. 287, 291, ¶ 15 (App. 2010). We do not defer to an association's interpretation of its covenants. *Johnson v. Pointe Cmty. Ass'n, Inc.*, 205 Ariz. 485, 490, ¶ 23 (App. 2003).

**¶16**       The language surrounding the term "action" within Section 12.09 demonstrates the parties' intent that the term references litigation in court, and not just any dispute. The referenced "action" will result in a "prevailing party" entitled to "recover" pursuant to a "judgment" and related "attorneys' fees and costs of [law]suit." There was no recoverable judgment, nor was there a lawsuit resulting in attorney fees and costs at the time of the Special Assessment.

**¶17**       To the extent we view "action" as reasonably susceptible to more than one meaning despite this context, external sources confirm that "action" here means litigation. In Arizona, we use the technical meaning of a word if the word has a peculiar meaning in law. A.R.S. § 1-213. We may consider statutes and dictionaries to assist in determining the ordinary meaning of words. *See Centerpoint Mech. Lien Claims, LLC v. Commonwealth Land Title Ins. Co.*, 255 Ariz. 261, 270, ¶ 45 (App. 2023).

**¶18**       Arizona law defines "action" as "any matter or proceeding in a court, civil or criminal." A.R.S. § 1-215(1). A technical definition of "action" is "the exercise of a claim before a judge." *Action*, Black's Law Dictionary (12th ed. 2024). Both definitions are consistent with how the CC&Rs use "action." The pre-litigation dispute was not an action because neither party had any proceeding before a court until Crosby sued to remove the Special Assessment. The Association cannot recover attorney fees under Section 12.09.

**¶19**       The superior court thus erred in granting summary judgment to the Association regarding the Special Assessment.

**III. Good Faith**

**¶20**       In his Complaint, Crosby claimed that the Association breached the covenant of good faith and fair dealing when it refused to

remove the Special Assessment from his lot. And he sought associated damages. The superior court did not explicitly rule on this claim, but impliedly rejected it by granting the Association's motion for summary judgment and denying Crosby's. Given our conclusion that the superior court erred in part in granting summary judgment to the Association, we consider here whether Crosby should be entitled to pursue this claim on remand. He should not.

¶21        Crosby's only basis for alleging a breach of the covenant of good faith and fair dealing is his claim that the Association breached the CC&Rs. Arizona law implies a covenant of good faith and fair dealing in every contract. *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 448, ¶ 30 (App. 2017). But a breach of this duty entails something beyond a breach of contract. *See FL Receivables Tr. 2002-A v. Ariz. Mills, LLC*, 230 Ariz. 160, 169, ¶ 42 (App. 2012) (one party's attempt to enforce an incorrect interpretation of a contract is not enough to establish a breach of the covenant of good faith and fair dealing). Without more, Crosby failed to allege the required elements of breach of good faith and fair dealing. The superior court did not err in granting summary judgment to the Association on this claim.

## IV. Improper Lien

¶22        Crosby also claimed the Association violated A.R.S. § 33-420. This statute allows a plaintiff to recover from a person who "causes a document asserting [a lien or interest] to be recorded in the office of the county recorder, knowing or having reason to know that the document is . . . groundless [or] contains a material misstatement or false claim." A.R.S. § 33-420(A). We need not address whether the Association placed an invalid lien on the lot because Section 33-420 applies only to documents "recorded in the office of the county recorder." A.R.S. § 33-420(A). The Association recorded no document and Section 33-420 does not apply here. The superior court did not err in granting summary judgment to the Association on Crosby's Section 33-420 claim.

## CONCLUSION

¶23        We affirm the superior court's grant of summary judgment against Crosby on the claims for breach of good faith and fair dealing and violation of Section 33-420. We reverse the superior court's grant of summary judgment in favor of the Association on the validity of the Special Assessment, and we remand for the entry of summary judgment for Crosby on that issue. *See Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393–94, ¶ 14 (App. 2010) (when both parties moved for summary judgment at the superior court and we reverse the court's grant of summary judgment for one party,

we are authorized to direct judgment for the other party). As a result, we vacate the superior court's award of attorney fees and costs to the Association.

**¶24** Both parties request their attorney fees on appeal. This is an "action arising out of contract." In our discretion, and upon his compliance with ARCAP 21, we award Crosby his reasonable attorney fees and costs incurred on appeal. *See* A.R.S. §§ 12-341 and 12-341.01.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV