NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANINDER CHATHA, et al., *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

DARMINDER MARWAH, et al., *Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 23-0400

FILED 08-15-2024

Appeal from the Superior Court in Maricopa County
No. CV2018-005519
The Honorable Daniel G. Martin, Judge
The Honorable Dewain D. Fox, Judge

**REVERSED AND REMANDED**

COUNSEL

Fennemore Craig, PC, Phoenix
By Timothy J. Berg, Joseph A. Schenk, Heather A. Macre
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Holden Willits, PLC, Phoenix
By Robert G. Schaffer, Nelson A. F. Mixon
*Counsel for Defendants/Appellees/Cross-Appellants*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**C A T T A N I**, Judge:

¶1 Dr. Maninder Chatha, Dr. Mandeep Sahani, Arizona Renal Investments, LLC, and Desert Kidney Associates, PLC, ("DKA") (collectively, "Appellants") appeal the superior court's grant of summary judgment in favor of Dr. Dharminder Marwah, ("Marwah"), his wife, Dr. Gurjot Marwah, Hervinder Consulting, LLC, Marwah Capital Holdings, LLC, and Healing Minds, PLC (collectively, "Appellees") on their claims and Marwah's contract counterclaims. Marwah cross-appeals the court's ruling denying prejudgment interest on his contract claims. For reasons that follow, we reverse and remand the court's grant of summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Doctors Marwah, Chatha, and Sahani (collectively, "DKA doctors") are licensed nephrologists. Marwah and Dr. Sean O'Regan (also a nephrologist) formed DKA in 2000. They hired Chatha in 2003 and Sahani in 2004.

### I. The O'Regan Buyout.

¶3 Marwah and O'Regan had disagreements about DKA's management, and Marwah sued O'Regan to dissolve DKA in 2006. Marwah intended to open a new practice with Chatha and Sahani. Attorney John Daniels helped Marwah and O'Regan reach a settlement wherein O'Regan was bought out of DKA. As part of the settlement, Marwah and O'Regan sold their interests from a separate joint venture investment, and Marwah used some of the proceeds from the sale to pay for O'Regan's interest in DKA. Even after paying O'Regan, Marwah left the transaction with a sizeable profit.

¶4 After the settlement in 2006, Marwah became the sole owner of DKA. Chatha and Sahani were acting members of DKA but were not formally made members and managers until April 2012. As acting members, they received equal payments from the DKA business, which included medical director fees from operating dialysis centers.

¶5 After the buyout, Marwah told Chatha and Sahani they needed to reimburse him for buying out O'Regan. Marwah indicated the buyout had left his family in a "difficult financial position," claiming that he took out a mortgage on his home to fund the transaction. To compensate Marwah for his alleged financial sacrifice, Chatha and Sahani agreed to give him extra compensation from their work in dialysis centers. The record does not show how much Chatha and Sahani paid Marwah or how long this arrangement lasted.

## II. The DKA, ADKHC, and Fresenius Joint Venture.

¶6 Fresenius Medical Care ("Fresenius") is a company that primarily operates outpatient dialysis facilities around the United States. Arizona Kidney Disease and Hypertension Centers, LLC, ("AKDHC") is a private medical practice specializing in nephrology in Arizona. In early 2008, Doctors Chatha, Sahani, Marwah, and Sanjay Lamba (who is not a party to the present lawsuit) invested with AKDHC and Fresenius in a joint venture ("JV") involving three dialysis centers. AKDHC and DKA doctors owned their shares of the JV through AKDHC Dialysis Holdings, LLC ("Holdings"), which owned 49 percent of the JV, with Fresenius owning the remaining 51 percent. AKDHC owned 65 percent of Holdings, while DKA doctors and Lamba split the remaining 35 percent, with each owning 8.75 percent.

¶7 To fund the investment, Holdings took out a loan that DKA doctors personally guaranteed. Over time, DKA doctors suspected that AKDHC and its managing member, Susan Price, were not correctly distributing the money owed to them under the JV investment. In January 2012, DKA doctors sued Price and AKDHC, alleging that payments had not been properly distributed. DKA doctors were represented by Daniels and his law firm. Fresenius was not a party to the litigation.

¶8 At some point, DKA doctors felt an urgency to settle due to the financial pressures of the lawsuit and other mounting expenses, and AKDHC, Price, and DKA doctors entered a settlement effective January 1, 2014. Marwah explained to Chatha, Sahani, and Daniels that he was told he needed to leave DKA, go work at Fresenius, and sell his JV interest as a condition of AKDHC agreeing to settle the lawsuit. True or not, Chatha, Sahani, and Daniels did not question Marwah's assertion.

¶9 The settlement included: compensation to DKA doctors for the missed payments, reissuance of checks DKA doctors never cashed, and a restructuring of the JV interests such that each DKA doctor owned his

percentage directly, not through Holdings.  Section 12 of the settlement required restructuring the JV's operating agreements and alluded to Fresenius purchasing Marwah's interest.

¶10          Daniels represented Marwah in the agreement by which Marwah sold Fresenius his JV interest.  For this sale, Marwah received $8.2 million.  Meanwhile, Marwah told Chatha and Sahani that he only received $1.5 million, what he described as "peanuts."

¶11          To compensate Marwah for his "financial sacrifice" to help reach a settlement agreement with AKDHC, Chatha and Sahani entered into several post-settlement contracts with Marwah.  First, they agreed to continue paying Marwah the medical director fees he would have been owed had he not left DKA.  Next, Chatha and Sahani (and Lamba) formed Arizona Renal Investments and entered into a consulting agreement with Marwah, effective January 1, 2014.  They agreed to pay Marwah 25 percent of the cash generated from the JV after the first two million dollars was distributed to active DKA partners participating in the JV.  Lastly, Marwah's resignation from DKA to work for Fresenius included language allowing Marwah to buy back his partnership interest at DKA for one dollar.

¶12          This arrangement lasted until early 2016 when Chatha and Sahani became concerned about their agreements with Marwah and stopped paying him.  On April 19, 2016, Chatha, Sahani, Marwah, and Daniels met at Daniels's house to discuss the payment situation.  At this meeting, Marwah repeated his assertion that he only received $1.5 million for the sale of the JV interest, to which Daniels replied, "[Marwah], you got more than that."  In the summer of 2017, Marwah met with Sahani and Daniels at the DKA offices and admitted that he had not been truthful about the amount of money he received from Fresenius in return for his JV interest.  On November 8, 2017, Chatha and Sahani terminated the consulting agreement between Arizona Renal Investments and Marwah.

## III.    This Lawsuit.

¶13          On September 12, 2018, Chatha, Sahani, Arizona Renal Investments, and DKA brought suit against Marwah, Marwah's wife, and Marwah's LLC companies, alleging fraud, negligent misrepresentation, breach of fiduciary duty, conspiracy to defraud, and aiding and abetting.  Marwah answered and asserted counterclaims for breach of contract, breach of fiduciary duty, conversion, and unjust enrichment.

**¶14**    Both sides moved for partial summary judgment, which the court granted in favor of Marwah on Appellant's claims of fraud, negligent misrepresentation, and breach of fiduciary duty. The court also found for Marwah on the counterclaims, except for the conversion claim, but left the issue of damages to be decided at trial. A jury awarded over ten million dollars to Marwah. The court then denied Marwah's request for prejudgment interest.

**¶15**    Both sides timely appealed, and we have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶16**    Summary judgment may be granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review a summary judgment ruling de novo, *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 447, ¶ 23 (App. 2017), viewing the facts in the light most favorable to the party against whom judgment was entered. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014). We consider only the evidence presented in the summary judgment record. *See Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 57, ¶ 17 n.2 (App. 2007) (noting that review of summary judgment is limited to the evidence before the superior court when ruling, not additional evidence first presented in a motion for reconsideration).

## I.    Summary Judgment on Appellants' Claims.

**¶17**    Appellants contend the superior court erred by granting summary judgment in favor of Marwah on their fraud, negligent misrepresentation, and breach of fiduciary duty claims. The court found (1) Appellants were not justified in relying on Marwah's assertion that he sold his interest in the JV for $1.5 million and (2) the claims were time-barred. We conclude to the contrary that there are genuine disputes of material fact about when Appellants discovered or should have discovered Marwah's alleged fraud and about whether Daniels's knowledge of Marwah's dealings should be imputed to Appellants. Accordingly, we reverse summary judgment on these claims.

### A.    Actual Knowledge and Duty to Investigate.

**¶18**    A two-year limitations period applies to claims for negligent misrepresentation and breach of fiduciary duty. *Coulter*, 241 Ariz. at 444, ¶ 9. A three-year limitations period applies to claims for common law fraud. *Id.*; *see* A.R.S. § 12-543(3). Accrual of these claims is governed by the

5

discovery rule, meaning that "a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's [tortious] conduct." *Coulter*, 241 Ariz. at 444, ¶ 10 (quoting *Anson v. Am. Motors Corp.*, 155 Ariz. 420, 423 (App. 1987)). If the failure to investigate is reasonably justified, a "blamelessly uninformed plaintiff" should not be punished by the statute of limitations. *Walk v. Ring*, 202 Ariz. 310, 315–16, ¶¶ 21, 23 (2002). Fraudulent concealment tolls the statute of limitations and encompasses acts like "mislead[ing] the party who claims the cause of action" and "fail[ing] to disclose true facts." *Anson*, 155 Ariz. at 427–28. When a plaintiff discovers or should have discovered the bias of his claim and a cause of action accrues are questions of fact generally reserved for the jury. *Walk*, 202 Ariz. at 316, ¶ 23.

**¶19** Appellants argue there are disputed issues of fact concerning when they knew or should have known of Marwah's alleged fraud that, taken in the light most favorable to Appellants, preclude summary judgment. The court found that Appellants had no right to rely on Marwah's representations that he sold his interest in the JV for $1.5 million because they: (1) signed a term sheet indicating Marwah would be paid "Fair Market Value" for his interest, (2) received an email from Daniels indicating their shares in the JV were worth $9.75 million each using a multiple-of-earnings approach and "that is how [Marwah's] interest was acquired," and (3) that "any reasonable person" would have then questioned Marwah's representations. But these facts are not dispositive and there were other facts that supported Appellants' assertion that they did not know or have reason to know of Marwah's alleged fraud.

**¶20** First, as detailed above, there was evidence from which jurors could conclude that Marwah led Chatha and Sahani to incorrectly believe that selling his shares in the JV and leaving DKA were critical to reaching a settlement with AKDHC. Similarly, there was evidence from which jurors could conclude that Marwah led Chatha and Sahani to believe he was making a financial sacrifice by selling his interest in the JV and leaving DKA, and that he did so for the benefit of DKA and to settle the lawsuit. Marwah does not dispute that he told Chatha and Sahani, as well as other partners at DKA, that he was only getting paid "peanuts" ($1.5 million) for his interest in the JV. And the final settlement agreement between DKA doctors and AKDHC did not include any language indicating what Marwah had been paid for his interest, and did not include the fair market value language the initial term sheet referenced. From these facts, a jury could find that Chatha and Sahani reasonably believed Marwah was making a financial sacrifice by accepting only $1.5 million for his JV interest.

¶21 Additionally, there is evidence that Marwah took steps to conceal his alleged fraud from Chatha and Sahani. Marwah's sale of his share to Fresenius included a confidentiality provision preventing disclosure of the sale price. Marwah then told Chatha and Sahani that he was only getting the $1.5 million, or "peanuts," for his share. And the jury could believe that Chatha and Sahani did not learn this was false until the meeting at Daniels's house in April 2016, when Marwah repeated that he "only got a million five" and Daniels corrected him. Additionally, Chatha and Sahani only learned at that point that Daniels had represented Marwah in the sale of his JV interest to Fresenius, something Marwah had not previously disclosed. Accordingly, there are factual issues on the question of fraudulent concealment, and those must be decided by a jury. *See Walk*, 202 Ariz. at 321, ¶ 42.

¶22 In finding that Appellants were on notice that Marwah received more than $1.5 million for his sale of the JV interest, the court relied, in part, on emails sent from Daniels to Chatha and Sahani on May 2, 2014. The emails informed Chatha and Sahani that their JV interests were worth "around 8-10 million," based on a "multiple of earnings approach that is how [Marwah's] interest was acquired." But the emails do not state what multiple of earnings was used in Marwah's sale and whether that same multiplier was used for Chatha and Sahani's interests. Nor do the emails indicate what Marwah's actual sale price was or whether it was identical to the value suggested in the initial email. Whether these emails should have put Appellants on notice to investigate for fraud is a question of fact precluding summary judgment.

¶23 Lastly, the superior court relied on *Coronado Development Corp. v. Superior Court*, in which this court held that a three-year statute of limitations for fraud had run before the plaintiffs sued the defendant even though "[plaintiffs] did not have actual knowledge that fraud had occurred." 139 Ariz. 350, 352 (App. 1984). In so holding, the *Coronado Development* court stated that the plaintiffs were "put on notice" of the potential fraud when they met with a lawyer more than three years earlier and the lawyer had told them that the defendant's representative "had lied to them." *Id.* at 351–52. Noting that "a person does not have to know every fact about his fraud claim before the statute begins to run," the court held that the lawyer's statement put them on notice that they needed "to either investigate further, or commence their lawsuit." *Id.* at 352. Here, although the emails Daniels sent may have put Appellants on notice to investigate, there is a reasonable inference to the contrary, particularly given Marwah's express misrepresentations and the absence of specific information

disputing what Marwah said he had received for selling his JV interest. Thus, this is an issue of disputed fact that should be decided by a jury.

## B. Imputed Knowledge.

**¶24** Under general rules of agency law, which apply to the attorney–client relationship, *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 14 (App. 2009), an attorney's knowledge can be imputed to his client. *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991). The question of whether agency exists is one of fact, but if no material facts are in dispute, it is a question of law. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 595, ¶ 21 (App. 2007).

**¶25** Appellants argue the superior court erred by imputing to them Daniels's knowledge of the price Marwah received for his interest in the JV, arguing that there are disputed facts as to whether Daniels was acting in his capacity as Appellants' agent when he learned the information. Appellees assert to the contrary that Daniels's involvement in the sale of Marwah's JV interest was part of Daniels's representation of Appellants in the AKDHC settlement and the post-settlement contracts.

**¶26** The superior court apparently determined that Marwah's sale of his JV interest to Fresenius and leaving DKA were part of the settlement between DKA and AKDHC. But there was evidence to the contrary. In particular, Susan Price avowed that she and AKDHC did not condition the settlement on Marwah's resignation from DKA or his sale of the JV interest. Additionally, Brian Gauger, an officer of Fresenius, testified that Marwah's employment with Fresenius did not require him to resign from DKA. Gauger instead stated that Marwah was offered a job for a variety of reasons, one of which was to try to alleviate the friction between AKDHC and DKA. Thus, viewing the facts in the light most favorable to Appellants, there is evidence from which a jury could conclude that Marwah's sale of his interest and leaving DKA were not a required part of the settlement.

**¶27** In light of that evidence, we next address whether Daniels's knowledge of the sale price should be imputed to Appellants. We are unaware of any case holding that knowledge an attorney gains during the representation of one client is imputed to a different client. *See In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) ("Perle has identified no case, nor are we able to find one, that imputes to a client knowledge that his lawyer gained while representing a *different* client.").

**¶28** Appellees point to the Restatement (Third) of the Law Governing Lawyers § 28 cmt. b (2000), which provides that "a lawyer's knowledge relating to the representation is attributed to the lawyer's

client." But the same comment goes on to say that "[a] client is not charged with a lawyer's knowledge concerning a transaction in which the lawyer does not represent the client." *Id.*

**¶29** Appellees also argue that the principle that "knowledge of a dual agent is normally imputed to both principals" applies here. *Manley v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 568, 573 (1991). A dual agent is an agent who represents both parties to the same transaction. *Ariz. Title Ins. & Tr. Co. v. Smith*, 21 Ariz. App. 371, 376 (App. 1974). But here, as detailed above, there is a dispute regarding whether Marwah's sale of his JV interest was part of the same transaction as the settlement between DKA and AKDHC. Accordingly, the representation issue cannot be resolved on summary judgment.

## II. Summary Judgment on Marwah's Counterclaims.

**¶30** Appellants next contend the superior court erred by granting summary judgment in favor of Marwah on his counterclaims for breach of contract. When a party is induced to enter a contract by fraudulent misrepresentations, the contract is voidable by that party. *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 16, ¶ 10 (App. 2014). A contract that lacks mutuality of obligations is void due to a lack of consideration. *Allen D. Shadron, Inc. v. Cole*, 101 Ariz. 122, 123 (1966).

**¶31** First, Appellants argue the superior court erred because the post-settlement contracts lacked consideration. The superior court found Marwah's consideration was the "[sale of] his ownership interest in the joint venture and [his withdrawal] as the founder and leader of DKA." As discussed above, whether Marwah's departure from DKA and the sale of his JV interest were a part of the settlement are disputed facts and inappropriate for summary judgment. Thus, whether Marwah made fraudulent misrepresentations to induce Chatha and Sahani into the post-settlement contracts is a question of fact to be decided by the jury. *See John Munic*, 235 Ariz. at 16, ¶ 10.

**¶32** Next, Appellants claim the superior court erred by stating that "Plaintiffs' fraud claim fails as a matter of law, and accordingly cannot be argued as a basis to void the [] consulting agreement." But we have reversed the superior court's summary rejection of Appellants' fraud claim. Accordingly, we reverse and remand on this issue.

### III. Other Arguments.

¶33 Appellants raise additional arguments concerning the superior court's denial of their motions for new trial and judgment as a matter of law. Additionally, Marwah cross-appeals the court's ruling denying prejudgment interest on his counterclaims. Because we remand to determine liability, we decline to address those arguments.

### CONCLUSION

¶34 We reverse and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AGFV